[Cite as *State v. Elson*, 2014-Ohio-2498.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-554 |
| v. | : | (C.P.C. No. 12CR-02-574) |
| Codey J. Elson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

*Nunc Pro Tunc*[1]

D E C I S I O N

Rendered on June 10, 2014

*Ron O'Brien,* Prosecuting Attorney, and *Sheryl L. Prichard,* for appellee.

*Yeura Venters,* Public Defender, and *Emily L. Huddleston,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Cody J. Elson, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury verdict, of one count of aggravated burglary, a felony of the first degree, two counts of aggravated robbery, felonies of the first degree, two counts of robbery, felonies of the second degree, two counts of robbery, felonies of the third degree, two counts of kidnapping, felonies of the first degree, and one count of felonious assault, a felony of the second degree, all with firearm specifications. Because: (1) both sufficient evidence and the manifest weight of the evidence support the convictions; (2) the prosecutor's

---

[1] This *nunc pro tunc* decision was issued to insert the release date in the original decision released on June 3, 2014, and is effective as of that date.

reference to the date defendant filed his notice of alibi did not amount to plain error; (3) trial counsel did not render constitutionally ineffective assistance; but (4) because the trial court's judgment entry imposing sentence differed from the court's oral pronouncement of the sentence, we affirm in part and reverse in part, and remand the case to the trial court.

## I. FACTS & PROCEDURAL HISTORY

{¶ 2} On February 2, 2012, the state indicted defendant on the above-listed crimes. The events giving rise to the indictment occurred on December 18, 2011.

{¶ 3} The evidence presented at trial established the following facts. On the evening of December 18, 2011, Shavonne Caudell and Lori Turner were in their apartment making dinner and watching television. Caudell and Turner explained that their small one bedroom apartment would become very hot when they would use their oven. As they had the oven on that evening to make dinner, their apartment was hot and they had cracked their front door open "maybe an inch or two" to cool it down. (Tr. 47.)

{¶ 4} At approximately 10:00 p.m., Caudell and Turner were sitting on their couch watching television when two males "[b]urst through the door" and entered their apartment. (Tr. 47.) The first individual to come through the door, who both of the victims later identified as defendant, had a gun in his hand and said " '[b]itch, I know you got pills in here. Where's your pills at? Where's the money and the pills at?' " (Tr. 51.) Defendant came over to where the women were seated on the couch, and said to the other man, " '[s]tay right here with her,' " in reference to Caudell. (Tr. 101.)

{¶ 5} Defendant then picked Turner up by her sweatshirt, "drug her into the bedroom, cocked the gun and put it to the back of her head" and said " '[b]itch, give me your pills.' " (Tr. 53.) While defendant had Turner in the bedroom, Caudell was sitting on the couch and the other man was "standing right over [her]." (Tr. 54.) Caudell leaned over and "peeked in the bedroom" to check on Turner, and defendant said to Caudell " '[b]itch, don't fucking look at me. Bitch, I'll kill you.' " (Tr. 55.)

{¶ 6} Turner explained that she is on several prescription medications for various illnesses she suffers from, including "sarcoidosis, * * * DJD, COPD, and asthma." (Tr. 105.) After defendant took Turner into the bedroom, and cocked the gun to the back of her head, defendant demanded to know where her pills were, and Turner

told him that all of her pills were on top of the dresser in the bedroom. As defendant had the gun pointed to the back of Turner's head, they walked over to the dresser. Defendant then "pushed [her] to the side, over to the side. He had the gun still aiming at [her], and he was grabbing just all the medication off [the dresser] and shoving it in his pockets." (Tr. 104.)

{¶ 7}   Turner explained that defendant then hit her on the top of the her head with the bottom of his gun, and started screaming " '[w]here's the money? Bitch, where's the money? If you scream, I'll fucking kill you, bitch.' " (Tr. 104.) Turner told defendant she did not have any money, and defendant kept threatening to kill her. Turner explained that she was "crying as hard as [she could] possibly cry at this point * * * [a]nd I'm telling him, 'I don't have any money.' " (Tr. 104.) Defendant "rummaged through [her] purse," and discovered that she truly did not have any money. (Tr. 105.)

{¶ 8}   The women had a flat-screen television in their bedroom, which they had purchased earlier that day, and another television in their living room. Defendant unhooked the television in the bedroom, and carried it into the living room. Defendant set the television down on a recliner, and began to try to unhook the second television in the living room. Defendant told the other man, " 'watch over them. Don't let them move.' " (Tr. 106.) As defendant was attempting to unhook the wiring on the television in the living room, the other individual said to defendant, " 'Codey, fuck it. Leave them something. Let's just get the fuck out of here.' " (Tr. 107.) Defendant told the women to " '[w]ait 15, 20 minutes before [they] said or did anything." (Tr. 63.) Defendant grabbed the flat-screen television off the recliner, and he and the other individual exited the apartment.

{¶ 9}   Caudell and Turner then grabbed each other, they were crying and "were scared to death." (Tr. 65.) Caudell noted that their "lives could have easily ended that night." (Tr. 65.) Caudell explained that her and Turner stayed in the house and waited 15 to 20 minutes, as defendant had directed.  The women then exited their apartment and went down stairs to the property manager's house and called 911.  Caudell explained that they left the apartment to call 911 because they were "scared to be in the house." (Tr. 65.)

{¶ 10} Officer James Schiering of the Columbus division of police responded to the victims' 911 call. He stated he arrived at the apartment at approximately 10:30 p.m., and made contact with the victims who he described as hysterical and upset. Officer Schiering gathered information from the victims about the suspects, and the victims reported that the suspects took a flat-screen television and prescription medications, including Turner's Oxycodone prescription. Turner provided Officer Scheiring with her receipt from the Kroger pharmacy where she had her prescription for a 120-count bottle of Oxycodone filled earlier that day.

{¶ 11} At trial, defendant testified in his own defense. Defendant stated that he did not commit the robbery, and explained that he was at a baby shower for his girlfriend, who was pregnant with his child, on December 18, 2011. Defendant testified that the baby shower was at his mother's house and that there were several people from his family at the event. Defendant presented testimony from his cousin, Joey Mentzer, his aunt, Kellie Lindsmith, and his girlfriend, Taylor Artis, who all testified that they were at the baby shower on December 18, 2011, and that defendant was there as well. Mentzer noted that he was at the shower from 4:30 p.m. until 10:30 p.m., and stated that defendant was at the shower "the whole time." (Tr. 144.)

{¶ 12} After considering the evidence, the jury found defendant guilty of each crime charged in the indictment. The court held a sentencing hearing on May 17, 2013, and sentenced defendant to an aggregate prison term of 15 years.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Defendant appeals, assigning the following errors:

1. The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain the convictions.

2. The judgment of the trial court was against the manifest weight of the evidence.

3. Appellant's right to a fair and impartial trial was violated when the state engaged in prosecutorial misconduct by improperly referencing the timing of Appellant's alibi arguing that it must be fabricated because it was [sic] filed until months after is [sic] initial arrest.

4. Counsel for Appellant fell short of providing adequate representation and as a result Appellant's right to effective assistance of counsel, was violated.

5. The trial court erred by failing to merge Appellant's convictions at sentencing in violation of R.C. 2941.25(A), the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 and 16 of the Ohio Constitution.

6. The trial court abused its discretion by issuing an inaccurate Judgment Entry.

## III. FIRST AND SECOND ASSIGNMENTS OF ERROR – MANIFEST WEIGHT AND SUFFICIENCY

{¶ 14} Defendant's first and second assignments of error assert that neither sufficient evidence nor the manifest weight of the evidence support his convictions.

{¶ 15} Whether evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The evidence is construed in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Conley*, 10th Dist. No. 93AP-387 (Dec. 16, 1993). When reviewing the sufficiency of the evidence the court does not weigh the credibility of the witnesses. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.

{¶ 16} Sufficiency of the evidence and manifest weight of the evidence are distinct concepts; they are "quantitatively and qualitatively different." *Thompkins* at 386. When presented with a manifest weight argument, we engage in a limited weighing of evidence to determine whether sufficient competent, credible evidence permits reasonable minds to find guilt beyond a reasonable doubt. *Conley. Thompkins* at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). In the manifest weight analysis the appellate court considers the credibility of the witnesses and determines whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.,*

quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1983). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony." *State v. Raver,* 10th Dist. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 17} The jury found defendant guilty of each crime charged in the indictment. Count 1 of the indictment charged defendant with aggravated burglary, in violation of R.C. 2911.11. R.C. 2911.11 provides, in relevant part, that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another" or if the offender "has a deadly weapon or dangerous ordinance on or about the offender's person or under the offender's control." R.C. 2911.11(A).

{¶ 18} Counts 2 and 3 of the indictment charged defendant with aggravated robbery as to each victim, respectively, in violation of R.C. 2911.01. R.C. 2911.01 provides, in relevant part, that "[n]o person, in attempting or committing a theft offense" shall "[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it" or "[i]nflict, or attempt to inflict, serious physical harm on another." R.C. 2911.01(A)(1) and (3). Counts 4 and 5 of the indictment charged defendant with second degree felony robbery as to each victim, respectively, in violation of R.C. 2911.02. R.C. 2911.02 provides, in relevant part, that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control" or "[i]nflict, attempt to inflict, or threaten to inflict physical harm, against another." R.C. 2911.02(A)(1) and (2). Counts 6 and 7 of the indictment charged defendant with third degree felony robbery as to each victim, respectively. A robbery is a third degree felony if the offender, while committing or attempting a theft offense, "[u]se[s] or threaten[s] the immediate use of force against another." R.C. 2911.02(A)(3).

{¶ 19} Counts 8 and 9 of the indictment charged defendant with kidnapping as to each victim, respectively, in violation of R.C. 2905.01. R.C. 2905.01 provides, in relevant part, that "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person" with the purpose "[t]o facilitate the commission of any felony or flight thereafter." R.C. 2905.01(A)(2). Count 10 of the indictment charged defendant with committing felonious assault against Turner, in violation of R.C. 2903.11. R.C. 2903.11 provides, in relevant part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordinance."

{¶ 20} The defense's theory of the case was misidentification. However, there was ample evidence in the record identifying defendant as the perpetrator of the charged crimes. Both victims were shown photo arrays on December 24, 2011, by a neutral administrator. Both victims, independently of each other, selected photo number two from the array, which was defendant's photo. Caudell stated she "was 100 percent sure that" the photo she selected was the man who entered her home on December 18, 2011. (Tr. 75.) Both of the victims also identified defendant in the courtroom as the man who entered their home on December 18, 2011. Additionally, Turner testified that the other man referred to defendant as "Codey" during the robbery, which is defendant's first name. Officer Schiering also testified that, when the victims provided him with a description of the suspects shortly after the incident, they informed Officer Schiering that "suspect number two called suspect number one 'Codey.' " (Tr. 25.)

{¶ 21} The evidence was sufficient to establish the crime of aggravated burglary, as it established that defendant forced his way into the victims' home while they were present, with the purpose to rob them of their property, while defendant had a firearm on his person and under his control. The evidence supported the crimes of aggravated robbery and second degree felony robbery as to each victim, as defendant stole prescription pills and a television from the victims while he possessed and displayed the firearm. The evidence also supported the third degree felony robbery charges, as defendant, while committing the theft of the victims' pills and television, repeatedly threatened the victims by telling him that he would kill them. The evidence also supported the crime of kidnapping as to each victim. The evidence established that

defendant used force to drag Turner by her sweatshirt from the couch into the bedroom in order to commit a felony. Caudell stated that defendant's accomplice stood over her the entire time to make sure she did not move, and that defendant, while possessing the gun, told his accomplice not to let Caudell move. Such evidence was sufficient to establish that defendant, by force or threat, restrained Caudell's liberty to facilitate a felony. The evidence that defendant held the gun to the back of Turner's head and cocked it, and that he hit Turner on top of her head with the bottom of the gun, supported the felonious assault charge. The evidence also demonstrated that defendant used a firearm throughout the encounter, thus supporting the R.C. 2941.145 firearm specification attendant to each charge.

{¶ 22} Based on the foregoing, there was sufficient evidence in the record to support each conviction.

{¶ 23} Regarding his challenge to the manifest weight of the evidence, defendant cites to numerous minor inconsistencies in the victims' testimonies, and asserts that these inconsistencies demonstrate that his convictions are against the manifest weight of the evidence. For example, defendant notes that, at trial, Caudell stated she believed that defendant had a .40-caliber automatic hand gun, but that in her statement to police she did not mention the type of gun defendant was carrying; defendant also notes that Caudell testified defendant left Turner in the bedroom when he came out with the flat-screen television, while Turner testified that defendant had brought her back to the couch before he went back into the bedroom for the television. Defendant notes that Caudell testified that she was 100 percent certain that the photo she selected from the photo array was the person who had entered her house on December 18, 2011, but she asked the detective who administered the photo array, " '[d]id we identify the right person?' " (Tr. 91.)

{¶ 24} Although, under a manifest weight of the evidence analysis, we are able to consider the credibility of the witnesses, "in conducting our review, we are guided by the presumption that the jury, * * * is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Tatum*, 10th Dist. No. 10AP-626, 2011-Ohio-907, ¶ 5, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

The jury heard all of the minor inconsistencies in the evidence cited by defendant, and resolved them accordingly. *Raver* at ¶ 21, citing *Antill* at 67. The jury was in the best position to judge the credibility of the witnesses, and the record does not indicate that the victims were wholly lacking in credibility. Accordingly, the jury did not lose its way in believing the victims' testimonies.

{¶ 25} Defendant also asserts that he presented "compelling evidence through [his] witnesses that he was in fact at a family baby shower on the date and time the offenses occurred." (Appellant's brief, 15.) The record evidence, however, provided the jury with ample reasons to disbelieve defendant's evidence indicating that he was at a baby shower on the night of the offense. Although defendant's cousin, aunt, and girlfriend all testified that defendant was with them at the baby shower on December 18, 2011, the witnesses also admitted that, even though they knew defendant had gone to jail for the charged crimes, they did not come forward prior to trial to inform the state that defendant was with them on the night of the incident. Additionally, aside from the defense witnesses' testimonies, there was no other evidence presented to corroborate defendant's alibi. For example, defendant's aunt testified that she had the baby shower marked on her calendar, but that she was unable to produce the calendar because she burned it in a fire, explaining "we don't recycle, we burn." (Tr. 156.) While defendant testified that they took pictures at the baby shower, defendant did not produce any of the pictures from the baby shower.

{¶ 26} Furthermore, when defendant was arrested on January 25, 2012, he spoke to a detective, but did not inform the detective that he had been at the baby shower on the night the charged crimes occurred. Defendant told the detective that he did not commit the robbery, and said that he "was probably * * * with Juan that day." (Tr. 190.) Even when the detective told defendant that the date of the incident was December 18, 2011, defendant said that date did not ring a bell to him, "[b]ecause [he] knew that [he] didn't rob nobody." (Tr. 186.) Defendant explained that he did not tell the detective that he was at the baby shower because his "mind was so messed up from what [the detective] told [him], it was just so much  was running through [his] mind, 'cause all the things that he was saying to me,' " that defendant was unable to recall that he had been at the baby shower on December 18, 2011. (Tr. 185.) The discrepancy between

defendant's trial testimony and his statement to the detective provided the jury with a sufficient basis to disbelieve defendant's alibi.

{¶ 27} The jury did not clearly lose its way in choosing to believe the state's evidence demonstrating that defendant had committed the charged crimes. The jurors were entitled to believe the victims' testimonies identifying defendant as the perpetrator of the charged crimes, while disbelieving defendant's evidence indicating that he was at a baby shower on the night the incident occurred. *Antill* at 67; *State v. J.L.S.*, 10th Dist. No. 08AP-33, 2009-Ohio-1547, ¶ 22 (noting that "[a] conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony").

{¶ 28} Based on the foregoing, both sufficient evidence and the manifest weight of the evidence supported defendant's convictions. Accordingly, defendant's first and second assignments of error are overruled.

## IV. THIRD ASSIGNMENT OF ERROR – PROSECUTORIAL MISCONDUCT

{¶ 29} Defendant's third assignment of error asserts that prosecutorial misconduct deprived him of a fair trial. Specifically, defendant asserts that the prosecutor engaged in misconduct by referencing the date he filed his notice of alibi.

{¶ 30} When reviewing allegations of prosecutorial misconduct, the test for appellate courts is whether the prosecutor's conduct was improper, and if so, whether that conduct prejudicially affected the substantial rights of the accused. *State v. Pilgrim,* 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 57 (10th Dist.) " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Wilkerson,* 10th Dist. No. 01AP-1127, 2002-Ohio-5416, ¶ 38, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Accordingly, prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984). The accused's failure to object to the alleged misconduct of the prosecutor at trial waives all but plain error on appeal. *State v. Perry,* 10th Dist. No. 01AP-996, 2004-Ohio-5152, ¶ 73. Defense counsel failed to properly object to the alleged instances of prosecutorial misconduct, and accordingly, we review for plain error.

{¶ 31} The plain error doctrine, enunciated in Crim.R. 52(B), states that plain errors or defects affecting substantial rights may be noticed even though they were not brought to the attention of the court. The rule places three limitations on a reviewing court's decision to correct the error, despite the absence of a timely objection at trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). First, there must be an error, i.e., a deviation from a legal rule. *Id.* Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), the error must be an "obvious" defect in the proceedings. *Id.* And third, the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *Id.* "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors." *Id.* at 27. The Supreme Court of Ohio has admonished courts "to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. *See also State v. Williams*, 79 Ohio St.3d 1, 12 (1997) (applying the plain error standard to a prosecutorial misconduct claim).

{¶ 32} Crim.R. 12.1 provides that, "[w]henever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi." "[W]here a defendant has filed a timely notice of alibi, and has given testimony tending to prove the alibi, it is error for the court to permit the prosecutor to adduce evidence of the date that defendant filed the notice of alibi." *State v. Sims*, 3 Ohio App.3d 331 (8th Dist.1982), paragraph one of the syllabus. Because Crim.R. 12.1 requires only that a defendant file their notice of alibi seven days before trial, "[t]he fact that the notice of alibi was not filed promptly after arrest is not probative of guilt." *Id.* The *Sims* court held that evidence of the date of filing the notice of alibi relates to the prior silence of the accused and, as such, introduction of the date of filing, absent special circumstances, violates the defendant's right to due process of law. *Id. See also Sims* at 333, fn. 6, citing *Jenkins v. Anderson* , 447 U.S. 231 (1980) (noting that, even if a defendant testifies at trial, the "evidence of prior silence is not admissible, * * * unless such evidence is probative of guilt").

{¶ 33} Defendant notes that he filed a timely notice of alibi on October 9, 2012, well in advance of the trial which began on March 27, 2013. Defendant asserts that the prosecutor improperly referenced the date he filed his notice of alibi (1) during the prosecutor's cross-examination of defendant's alibi witnesses, (2) during the prosecutor's cross-examination of defendant, and (3) during closing argument.

### 1. Cross-Examination of Alibi Witnesses

{¶ 34} Defendant asserts that the prosecutor made improper references to the filing of his notice of alibi during the prosecuting attorney's cross-examination of defendant's alibi witnesses: Mentzer, Lindesmith, and Artis. Each of these witnesses testified that defendant was at the baby shower the entire evening of December 18, 2011. The prosecutor asked each of these witnesses if they knew that defendant had gone to jail for the charged crimes, and each witness indicated they did become aware of that fact. The prosecutor then asked each witness if they ever called the police or contacted the prosecutor's office, to inform the state that defendant could not have committed the crimes which he was being held in jail for, as he was at the baby shower the entire evening of December 18, 2011. Each witness indicated that they had not called the police or the prosecutor's office to inform them of defendant's whereabouts on December 18, 2011.

{¶ 35} Defendant asserts that the prosecutor's cross-examination of his alibi witnesses "clearly suggest[ed] that the defendant ha[d] an obligation to provide the alibi information at the onset of the investigation rather than seven days prior to trial as required by Crim.R. 12.1." (Appellant's brief, 28.) We disagree. The prosecutor did not mention or even reference the date defendant filed his notice of alibi when cross-examining these witnesses. Rather, the prosecutor simply inquired of each witness whether they came forward between defendant's arrest and the trial to inform the state that defendant was with them on the night of the robbery. Comments by a prosecutor regarding how a defendant's alibi witnesses "did not talk to the police and did not come forward until trial [are] fair comments on the evidence." *State v. Hirsch*, 129 Ohio App.3d 294, 311 (1st Dist.1998). Accordingly, the prosecutor's cross-examination of defendant's alibi witnesses was not improper.

### 2. Cross-Examination of Defendant

{¶ 36} Defendant next asserts that the prosecutor improperly referenced the date he filed his notice of alibi during the prosecutor's cross-examination of defendant. The prosecutor began her cross-examination by asking defendant how he could have forgotten that he was at the baby shower on December 18, 2011, and why he instead said that he was probably with Juan on December 18, 2011, when the detective interviewed him following his arrest. Defendant explained that he was in shock when the detective told him what he was being charged with, and stated that even if he said he was with Juan that day, "that [did not] mean [he] was with Juan that whole day probably." (Tr. 190.) The prosecutor then asked defendant if his mother and Artis would come to visit him in jail, and defendant confirmed that they would come to see him in jail. The prosecutor then asked defendant the following:

> Q. Okay. You didn't come up with your alibi until October of 2012; isn't that right?
>
> A. Come up with alibi.
>
> Q. That's what this is called, an alibi. You say you weren't at [the victims' apartment], correct?
>
> Ms. Phipps: Objection. I'm not sure my client would understand what you're getting at.
>
> The Witness: I don't.
>
> The Court: You can still ask the question. If he doesn't understand, he can say that.

(Tr. 194.)

{¶ 37} The prosecutor then asked defendant if he knew the charged crimes occurred on December 18, 2011, and defendant indicated that he was aware of that fact from the trial testimony. The prosecutor did not ask defendant again about when he came up with his alibi.

{¶ 38} Although defense counsel objected as noted above, defense counsel's objection was to the form of the question. It was not an objection on the basis of improper questioning regarding the date the notice of alibi was filed. " 'An objection to evidence on one ground does not preserve an objection on another ground, absent plain

error.' " *State v. Jewett*, 10th Dist. No. 11AP-1028, 2013-Ohio-1246, ¶ 63, quoting *State v. Barnes*, 10th Dist. No. 04AP-1133, 2005-Ohio-3279, ¶ 28. Accordingly, we apply the plain error standard to this alleged instance of prosecutorial misconduct.

{¶ 39} Although the prosecutor asked defendant whether he came up with his alibi in October of 2012, the prosecutor did not indicate that defendant filed his notice of alibi in October of 2012. Indeed, the prosecutor did not ask defendant any questions about when he filed his notice of alibi, and did not elicit from defendant the date on which the notice of alibi was filed. Accordingly, the prosecutor's question was not improper under *Sims*. *See State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 21 (where the prosecutor asked the detective when he became aware of the defendant's alibi, but did "not elicit the date on which the notice of alibi was filed," the prosecutor's conduct did not "run afoul of the holdings of *Tolbert* or *Sims* and [thus did not] constitute prosecutorial misconduct"); *State v. Haddix*, 12th Dist. No. CA2011-07-075, 2012-Ohio-2687, ¶ 31 (finding no error where there was "no indication that the state commented on the date that Haddix filed his notice of alibi").

{¶ 40} Moreover, because defendant told the detective that he was probably with Juan on December 18, 2011, but testified at trial that he was at the baby shower on that date, the prosecutor's question asking defendant when he came up with his alibi was a proper attempt to impeach defendant's alibi. *See Norman* at ¶ 32 (noting that the majority of what the appellant challenged as prosecutorial misconduct was merely "commentary regarding the relative strength of appellant's alibi given that" the defendant did not discuss his "alibi with the investigating detective"); *State v. Jones*, 8th Dist. No. 62415 (Apr. 29, 1993) (noting that the "[a]ppellant did not remain silent at the time of his arrest or afterwards and cannot rely on *Doyle* to prevent the prosecutor from attempting to impeach his alibi with what he said and did not say").

{¶ 41} As the prosecutor did not ask defendant about the date that he filed his notice of alibi, we do not find the prosecutor's cross-examination of defendant improper.

### 3. Closing Argument

{¶ 42} Defendant lastly asserts that he was deprived of a fair trial when the prosecutor commented on the date he filed his notice of alibi during closing arguments.

During the state's initial closing argument, the prosecutor noted that defendant was unable to recall when he was arrested on January 25, 2012; that he was at his own baby shower on December 18, 2011. The prosecutor noted that defendant said "that date didn't really ring a bell," and stated that the date "didn't ring a bell until 258 days later when his alibi was filed." (Tr. 219.) In rebuttal, the state noted that defendant, "didn't come up with [the baby shower alibi] until October 9th, 250 days – 258 days after he was interviewed is when they come up with it." (Tr. 244.) The prosecutor again noted during rebuttal that "December 18th, 2011, did not ring a bell to that man over there until 258 days later. That's when the bell rung and he figured out where he was. Oh, the shower." (Tr. 248.) Taken as a whole, these comments during closing argument demonstrate that the prosecutor did reference the date defendant filed his notice of alibi. Defense counsel did not object to any of these statements.

{¶ 43} A prosecutor is afforded wide latitude in closing argument, which must be reviewed in its entirety in order to determine whether the challenged remarks prejudiced the defendant. *State v. Hill*, 75 Ohio St.3d 195, 204 (1996). During closing argument, the state can summarize the evidence and draw conclusions as to what the evidence shows. *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 116. Furthermore, even if there were prosecutorial misconduct, such conduct is only treated as reversible error in rare circumstances. *State v. Banks,* 10th Dist No. 03AP1286, 2005-Ohio-1943, ¶ 6; *State v. Davis,* 10th Dist. No. 09AP-869, 2011-Ohio-1023, ¶ 29. Because defense counsel did not object to the prosecutor's comment during closing argument, we review for plain error, asking whether "defendant would not have been convicted in the absence of the improper conduct." *State v. Saleh*, 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶ 68.

{¶ 44} Pursuant to *Sims*, we find the prosecutor engaged in misconduct by referencing the date of defendant's timely filed alibi. Nevertheless, we do not find that the prosecutor's comments rose to the level of plain error.

{¶ 45} The trial court instructed the jury that closing arguments of counsel were not evidence, and we presume that the jury followed the trial court's instructions. *State v. Sullivan,* 10th Dist. No. 10AP-997, 2011-Ohio-6384, ¶ 31; *State v. Honcok*, 108 Ohio

St.3d 57, 2006-Ohio-160, ¶ 86. *See also State v. Marcum*, 4th Dist. No. 12CA6, 2013-Ohio-5333, ¶ 54.

{¶ 46} Reviewing the entire record, we conclude that the prosecutor's reference, during closing arguments, to the date defendant filed his notice of alibi did not deprive defendant of a fair trial. *See State v. Tolbert*, 70 Ohio App.3d 372, 381 (1st Dist.1990) (although the court found that the "trial court did indeed commit error in permitting the prosecutor to adduce evidence concerning the date the defendant filed his notice of alibi," it nevertheless concluded that the reference to the date the notice of alibi was filed did not amount to plain error, due to the overwhelming evidence of the defendant's guilt). Defendant asserts that the instant case differs from *Tolbert* because, here, the evidence against him was not overwhelming. We disagree.

{¶ 47} The main issue in this case was whether the victims correctly identified defendant as the perpetrator of the charged crimes. Although defendant presented an alibi, aside from witness testimony, defendant did not present any other evidence to corroborate his alibi. As such, the strength of defendant's alibi rested solely on the credibility of the defense witnesses, and the state properly impeached defendant's alibi with the statements defendant made to the detective following his arrest.

{¶ 48} The state's evidence overwhelmingly supported the conclusion that defendant committed the charged crimes. The victims independently selected defendant's photo from a photo array one week after the crime occurred, and identified defendant in court as the man who entered their home and robbed them on December 18, 2011. Turner indicated that she was "a hundred percent" sure that defendant was the man who entered her home on December 18, 2011. (Tr. 109.) Additionally, Turner and Officer Schiering testified that the other suspect had called defendant "Codey" during the robbery.

{¶ 49} As defendant's first name is Codey, the victims both independently selected defendant's picture from a photo array shortly after the incident, the victims positively identified him in court, and defendant did not tell police that he was at the baby shower on December 18, 2011 on the night he was arrested, we do not find this case to be the extreme example which would warrant us in finding plain error. The jury simply had to determine whether the victims' identification of defendant was more

credible than the defense testimony indicating that defendant was at a baby shower on December 18, 2011. The jury resolved the credibility determination against defendant, and the trial record provided them with ample reasons to do so. Accordingly, we cannot say that, absent the prosecutor's reference during closing argument to the date defendant filed his notice of alibi, the jury would not have found defendant guilty of the charged crimes. To the extent the prosecutor improperly commented on the date the notice of alibi was filed, the comment did not prejudicially affect the substantial rights of defendant.

{¶ 50} Based on the foregoing, defendant's third assignment of error is overruled.

## V. FOURTH ASSIGNMENT OF ERROR − INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 51} Defendant's fourth assignment of error asserts that he was denied the effective assistance of trial counsel. Defendant argues that his counsel rendered ineffective assistance by failing to object to the cited instances of prosecutorial misconduct outlined above.

{¶ 52} In order to succeed on the claim of ineffective assistance of counsel, defendant must satisfy a two-prong test. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Defendant must show that (1) defense counsel's performance was so deficient that he was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) that defense counsel's errors prejudiced defendant, depriving him of a trial whose result is reliable. *Id.* To establish that counsel's performance was deficient, defendant must prove that counsel's performance fell below an objective standard of reasonable representation. *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133. In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To show prejudice, the appellant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204.

The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley,* 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697 (finding " 'there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one' ").

{¶ 53} We have already determined that the prosecutor's cross-examination of defendant and defendant's alibi witnesses was not improper. Accordingly, defendant's trial counsel was not deficient in failing to object to those statements. Although we determined that the prosecutor's reference in closing argument to the date defendant filed his notice of alibi was improper, we further found that, even in the absence of the prosecutor's improper comments during closing, the jury would still have convicted defendant. Accordingly, defendant is unable to show prejudice resulting from his counsel's failure to object to the prosecutor's reference to the date he filed his notice of alibi during the state's closing argument.

{¶ 54} Based on the foregoing, defendant's fourth assignment of error is overruled.

## VI. FIFTH AND SIXTH ASSIGNMENTS OF ERROR – SENTENCING ISSUES

{¶ 55} Defendant's sixth assignment of error asserts that the trial court abused its discretion by issuing an inaccurate judgment entry. The court's judgment entry states that "[f]or purposes of sentencing Counts Four, Five, Six and Seven merge with Count One." (Judgment Entry, 2.) The court's judgment entry thus indicates that the four robbery convictions merged into the aggravated burglary conviction. At the sentencing hearing, the court stated the "two counts of aggravated robbery, two F-2 robberies and two F-3 robberies, which, I think all merge." (Tr. 297.) The prosecutor noted that the "robberies merge into the aggravated robberies," and the court said "[r]ight." (Tr. 298.) Additionally, at the sentencing hearing, the court did not announce any sentence for Count 10 of the indictment, the felonious assault charge. However, in the court's judgment entry, the court imposed a three-year sentence on Count 10 of the indictment.

{¶ 56} Crim.R. 43(A) provides that "defendant shall be present at * * * the imposition of the sentence." A criminal defendant thus has the right to be present when their sentence is imposed. Additionally, a court speaks only through its journal entries.

*State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, ¶ 12. Therefore, if the sentence set forth in the judgment entry differs from that pronounced in the defendant's presence, the judgment entry is invalid. *State v. Carpenter*, 1st Dist. No. C-950889 (Oct. 9, 1996). *See also State v. Aliane*, 10th Dist. No. 03AP-840, 2004-Ohio-3730, ¶ 8. Because the court did not orally impose a sentence for Count 10 of the indictment at the sentencing hearing, defendant was not present when the court imposed the sentence as to that conviction. Accordingly, the court's judgment entry imposing sentence constitutes reversible error. *See also State v. Jones*, 10th Dist. No. 98AP-639 (Mar. 18, 1999).

{¶ 57} Furthermore, there is a variance between the court's statements at the sentencing hearing, where the court indicated that the robbery convictions merged into the aggravated robbery convictions, and the journal entry where the court stated that the robbery convictions merged into the aggravated burglary conviction. "[A] variance between the sentence pronounced in open court and the sentence imposed by the court's judgment entry requires a remand for sentencing." *Id.* On remand, the court is not obligated to impose "the sentence originally stated in open court." *Id.* The state concedes that defendant's sixth assignment of error has merit, and that the case should be remanded for resentencing.

{¶ 58} Defendant's fifth assignment of error asserts that the trial court erred in failing to merge the aggravated robbery, aggravated burglary, kidnapping, and felonious assault convictions. We have already determined that the case must be remanded for resentencing, in part because of the discrepancy between the trial court's journal entry and the trial court's statements at the sentencing hearing regarding the merger. Accordingly, any ruling on defendant's fifth assignment of error would be advisory in nature. *See State v. Doing*, 8th Dist. No. 87428, 2006-Ohio-5252, ¶ 29 (noting that "[t]his court cannot know what sentence the court will choose to impose on remand, and will not under these circumstances give advisory opinions on what might be appropriate").

Based on the foregoing, we sustain defendant's sixth assignment of error, thereby rendering defendant's fifth assignment of error moot. The case will be remanded for a new sentencing hearing.

**VII. DISPOSITION**

{¶ 59} Having overruled defendant's first, second, third, and fourth assignments of error, but having sustained defendant's sixth assignment of error, thereby rendering defendant's fifth assignment of error moot, we affirm the judgment of the Franklin County Court of Common Pleas in part, but vacate defendant's sentence and remand the case for resentencing.

*Judgment affirmed in part and reversed in part;*
*case remanded.*

KLATT and T. BRYANT, JJ., concur.

T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____