CITY OF COLUMBUS, APPELLEE, *v.* WRIGHT, APPELLANT.

(No. 87AP-1048 — Decided
August 11, 1988.)

*Ronald J. O'Brien,* city attorney, *James J. Fais,* city prosecutor, *Dana M. Peters* and *Thomas K. Lindsey,* for appellee.

*James Kura,* county public defender, and *Paul Skendelas,* for appellant.

WHITESIDE, P.J. Defendant appeals from his conviction in the Franklin County Municipal Court of carrying a concealed weapon and raises a single assignment of error as follows:

"The trial court erred in overruling appellant's motion to suppress evidence obtained in violation of appellant's right under the Fourth and Fourteenth Amendment[s] to the United States Constitution and Article I, Section 14 of the Ohio Constitution."

Following the trial court's overruling of defendant's motion to suppress evidence, including the discovery of the gun which is the gravamen of the motion, defendant entered a no contest plea to the charge and was found guilty. The motion to suppress was tried to the trial court upon a stipulation of the parties as to the facts involved, which stipulation reads as follows:

"1. On December 6, 1985, defendant, William Gordon Wright, a male, black, date of birth May 21, 1949, social security number 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, last known address of 1834 Oak Street, Columbus, Ohio 43205, hereinafter 'defendant,' was charged with Carrying a Concealed Weapon, violating Columbus City Code §2323.02.

"2. A .32 caliber 'Ivers Johnson' 5 shot handgun was found concealed in defendant's coat pocket during a 'patdown' frisk of the defendant in 'Jungle Jim's Bar,' 1226 East Long Street, Columbus, Ohio, a licensed tavern, on December 6, 1985.

"3. On December 6, 1985, Columbus Vice Squad officer Tom Strausbaugh, other vice squad officers, narcotics officers, Department of Liquor Control agents and officers from Special Weapons and Tactics (SWAT) entered 'Jungle Jim's Bar.' Officer Strausbaugh had 6 to 8 years experience on the Vice Squad, 4 to 5 years experience in the Narcotics

Bureau, 4 to 6 years experience in Homicide and had been a police officer for 20 years.

"4. Entry into 'Jungle Jim's Bar' was made pursuant to a search warrant. See Exhibits 1 and 1A, Appx. 1 and 2. The search warrant was signed by Municipal Court Judge Beatrice Sowald at 11:00 a.m., the day of the search; the search was made at 11:00 p.m. No return receipt of inventory was filed with the Clerk of Courts. No recital of the facts going toward probable cause is contained on the face of the search warrant. No record of this search warrant is on file with the Clerk of Courts.

"5. The search warrant states that 'the premises known as 1226 E. Long Street, a tavern identified as Jungle Jim's Lounge and the curtilage thereof; and the clothing of unknown patrons and/or occupants of said premises' were the object of the search. *Id.* at 1.

"6. The search warrant recites that it is applied for under 'Criminal Rule 41 B- Evidence of the commission of criminal offenses, to wit: illegal possession of firearms and drug abuse and O.R.C. 4301.01-Violations of Liquor Laws and regulations in Chapters 4301 and 4304 O.R.C. *Specifically* -Drugs of abuse, firearms, and other weapons carried concealed on Persons, Violations of Health and other Regulations applicable to Liquor Permit Premises, together with other fruits, instrumentalities, and evidence of illegally operating a permit premises at this time unknown. *Id.*

"7. Prior to this December 6, 1985 search, from January 1985 to December 31, 1985, a total of 232 separate 'Demands for Service' from police were attributable to 'Jungle Jim's Bar.' See Exhibit 3, Appx. 4. Among these police runs were complaints involving: two shootings, six robberies, two wanted felons, three 'shots fired,' eleven fights and four-

teen separate 'gun runs.' This activity was logged by the Columbus Vice Squad, contained in the Vice Squad's business records, known to vice officer Tom Strausbaugh and the other law enforcement officers participating in the December 6, 1985 search of 'Jungle Jim's Bar.' No evidence links Mr. Wright to any of these prior complaints. 'Jungle Jim's Bar' had a notorious reputation among the Columbus Police Department for narcotics trafficking and violence.

"8. Upon entering 'Jungle Jim's Bar' at approximately 11:00 p.m. on December 6, 1985, uniformed officers from the Columbus Police Department and SWAT units entered first. They were followed by vice and narcotics officers in plain clothes. In the dimly lit immediate bar area, an area measuring approximately 40 feet wide by 120 feet long, between 15 to 20 patrons were observed. Scattered in their immediate area were assorted pills, syringes, partial remains of syringes and a knife. Later analysis would reveal that there were 140 pills on the bar floor constituting six different contraband drugs, a baggie containing 5.4 grams of marijuana, a cigarette pack with cigarettes made of marijuana and a waxed paper packet containing 5.1 grams of heroin. See Exhibit 4. Appx. 6.

"9. Among these patrons stood the defendant, William Gordon Wright. The exact distances between Mr. Wright and the contraband and knife laying [*sic*] on the bar room floor are unknown.

"10. The 'pat-down' search or frisk of Mr. Wright took place in the following manner: all patrons were ordered to stand against the wall by law enforcement officers. 'Pat-down' frisks of all patrons were commenced. Mr. Wright, upon being ordered against the wall, complied by moving to the wall somewhat more slowly than the other patrons. Mr. Wright made no

gesture, no remark, no indication of anything which could be suggested to be a threat to any police officer present. A 'pat-down' frisk of Mr. Wright was conducted by vice officer Tom Strausbaugh and SWAT officer R. Reffitt. During the 'pat-down' search of Mr. Wright, a bulge was felt in Mr. Wright's left coat pocket; which upon its removal from the inside of Mr. Wright's left coat pocket was determined to be a handgun. The handgun was seized, inventoried and identified as a 5 shot 'Iver's Johnson' handgun. See Exhibits 5, Appx. 7. Mr. Wright was subsequently charged with Carrying a Concealed Weapon in violation of Columbus City Code §2323.02. It is this handgun which forms the basis of the charge."

In support of his assignment of error, defendant raises three issues: (1) a contention that defects in the search warrant violate Crim. R. 41 and render the search of the tavern unconstitutional; (2) that the failure of the judge issuing the warrant to limit the scope of the search renders the warrant invalid under the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution; and (3) that the officer's reliance upon the allegedly defective search warrant as a foundation for searching defendant does not fall within the good-faith exception to the exclusionary rule.

The city first contends that the issue of facial validity of the search warrant is not properly before us because it was not raised in the trial court. We agree that issues not raised in the trial court may not be considered on appeal and that, likewise, evidence not presented in the trial court may not be considered on appeal, as held in the case cited by the city, *State* v. *Ishmail* (1978), 54 Ohio St. 2d 402, 8 O.O. 3d 405, 377 N.E. 2d 500. On the other hand, the parties stipulated the evidence surrounding the facial invalidity issue, indicating that the entry by the officers into the bar was pursuant to a search warrant, as to which no return or inventory or other record of the search warrant was filed with the clerk of courts, and that the face of the search warrant does not contain a recital of the facts constituting probable cause for its issuance. Crim. R. 41(C) provides that:

"A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. * * * The warrant shall be directed to a law enforcement officer. It shall command the officer to search, within three days, the person or place named for the property specified. * * *"

The stipulation indicates that the affidavit was not reproduced in the search warrant, but does not establish that none existed. On the other hand, Crim. R. 41(E) provides as follows:

"The judge before whom the warrant is returned shall attach to the warrant a copy of the return, inventory, and all other papers in connection therewith and shall file them with the clerk."

Thus, there is a facial violation of Crim. R. 41(E) since none of the papers is on file with the clerk of the trial court as required by that rule. Crim. R. 41(D) requires an officer taking property under a search warrant to give to the person from whom the property is taken a copy of the warrant and receipt for the property and to make a written return accompanied by

a written inventory of property taken, which returns shall be made to a judge designated in the warrant pursuant to Crim. R. 41(C).

The "defect" is primarily the absence of records, including the absence of the record of the affidavit upon which the warrant was issued, rather than a demonstration that such do not exist. The stipulation does not indicate the absence of an affidavit, but only that such affidavit is not on file with the clerk as it should be.

Similarly, with respect to defendant's contention that it was an abuse of discretion to authorize a nighttime search of a bar, we find no evidence supporting defendant's contention. As a matter of common knowledge, bars tend to be frequented more at night. In any event, the issuing judge authorized a nighttime search and no abuse of discretion has been demonstrated.

Defendant also contends the warrant lacks sufficient particularity as to the items to be seized and the persons to be searched. Although the stipulation indicates some generality with respect to the items to be searched for, it does specifically mention "drugs of abuse, firearms, and other weapons carried concealed on persons." It also authorizes search of the designated premises and occupants and patrons thereon. This is sufficiently specific.

The stipulation also indicates that when the officers entered the premises, they saw a weapon and items involving drug abuse, including illegal drugs, in plain view. Thereupon, the officers conducted a "pat-down" search or frisk of defendant as well as other patrons. During this "pat-down" search, a bulge was felt in defendant's left coat pocket. Further investigation resulted in discovery of the handgun which constitutes the predicate for the concealed weapon charge.

The stipulated facts do not indicate whether the bar in question was open to the public for business at the time the officers arrived with the search warrant. However, the stipulation does indicate that the bar was a licensed tavern and that the search occurred at 11:00 p.m. on a Friday evening, so that it is reasonable to believe the bar was open for business at the time.

Even had the officers arrived without a search warrant, their actions in question would have been justified. When the officers arrived, without conducting a search other than viewing that which was in plain view, they discovered a weapon and the contraband as well as fifteen to twenty patrons in the immediate area. There had been two hundred and thirty-two "demands for service" from the police during the year, including runs for robbery, shootings, fights and "gun runs." It was stipulated that the bar "had a notorious reputation among the Columbus Police Department for narcotics trafficking and violence." There was, however, no evidence to connect defendant to any of these matters. Nevertheless, confronted with the situation herein involved, the police officers were justified in conducting a *Terry*-type search or pat-down frisk of the patrons for the safety of the officers themselves, since there was a reasonable suspicion that one or more of the patrons might be armed and the officers could protect themselves only by conducting a *Terry*-type search of all of the patrons, since there is no indication that the officers had any basis for differentiating among the patrons.

This case is readily distinguished from the decision of this court in *State v. Croft* (Apr. 1, 1982), Franklin App. No. 81AP-803, unreported, wherein we held that the mere fact there was a police raid on an unlicensed bar did not justify a search of all of the patrons of that bar for weapons. We did note, however, that other evidence might

justify such a search, indicating that such a search might be justified where there is evidence that some of the patrons of a bar under investigation by the police are likely to be armed and dangerous. Here, such circumstances were stipulated, by the stipulation that the bar in question had a "notorious reputation * * * for narcotics trafficking and violence."

In light of the fact that the bar was open for business, the police officers had a right to be present and to observe what was observable, even if the search warrant itself is defective or illegal. The evidence was not obtained pursuant to the search warrant, as such, but, instead, was obtained pursuant to a pat-down frisk of patrons after the officers had observed contraband in plain view, including drugs on the floor of the bar, which bar had a reputation for violence.

We do not embrace the city's contention that the police should be authorized to conduct a limited search for weapons of all persons present during execution of a drug-related search warrant. However, we do find that under the circumstances herein, the police officers were justified in making a *Terry*-type search of patrons for weapons for their own protection, as well as for that of the patrons themselves. See *Terry* v. *Ohio* (1968), 392 U.S. 1.

The city also contends that even if a search warrant were defective, the exclusionary rule should not apply under the good-faith exception set forth in *United States* v. *Leon* (1984), 468 U.S. 897. While we agree that the good-faith exception applies under the circumstances herein, we do not find it necessary to rely solely thereon, as is demonstrated above.

Here, the officers were executing a search warrant directing them to search a particular location for a particular person, which warrant had been issued by a duly authorized judge of the municipal court. Although the record does not contain the affidavit upon which the warrant was based, there is nothing to indicate that the affidavit or other sworn testimony given to the judge in connection with the issuance of the search warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Nor is the warrant itself so facially deficient that the executing officers could not reasonably believe it to be valid.

*Leon, supra,* recognizes that a police officer cannot be expected to have the degree of legal expertise or to exercise the type of legal judgment that we expect a magistrate to utilize in issuing a search warrant. Thus, *Leon* teaches that even though a reviewing court might find that the issuing judge abused its discretion in issuing the search warrant, nevertheless, the police officer may rely upon the legal judgment and decision of the judge as to the propriety for issuance of the warrant. Thus, the exclusionary rule does not apply where a police officer conducts a search as a result of a reasonable good-faith reliance upon a search warrant issued by a judge. To hold to the contrary would require the police officer to possess and exercise greater legal ability and judgment than is required of the judge issuing the search warrant.

In other words, a search warrant issued by a judge of competent jurisdiction is presumably valid and a police officer may rely upon the validity of the search warrant in conducting the search commanded by that warrant. The exclusionary rule does not preclude use of evidence obtained by a police officer in the good-faith execution of, and reliance upon, a search warrant, even if the warrant is defective, unless the warrant is so totally de-

fective upon its face that a reasonable police officer would not rely upon such warrant.

The defects apparent from the stipulations herein are not those in issuing the warrant but, rather, in executing the warrant and what occurred thereafter. For whatever reason, the issuing judge failed to cause a copy of the warrant and supporting papers to be filed with the clerk of courts, and the inventory and return were not filed with the clerk. Under Crim. R. 41, the warrant is to be returned to a judge and that judge is required to cause the appropriate papers to be filed with the clerk. There is, however, no evidence that such papers did not exist or that sufficient cause was not demonstrated by affidavit or oral testimony to justify the issuance of the search warrant by the judge. Rather, the defective action demonstrated is that which occurred after execution of the search warrant, rather than that which occurred in connection with its issuance.

Since the weapon in question was seized as a result of a valid *Terry*-type search for weapons, irrespective of the search warrant, and since the search warrant is not facially defective and has not been demonstrated to have been improperly issued without sufficient cause by the issuing judge, and since to the extent, if any, the search was pursuant to the search warrant and the officers involved acted in good-faith reliance upon the search warrant, the exclusionary rule does not apply.

Accordingly, the assignment of error is not well-taken.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Franklin County Municipal is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and MCCORMAC, JJ., concur.