[Cite as *State v. Newton*, 2026-Ohio-2416.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | Nos. 25AP-481 |
| v. | : | (C.P.C. No. 23CR-3798) and |
| Myyaun T. Newton, | : | 25AP-482 (C.P.C. No. 24CR-5696) |
| Defendant-Appellant. | : | |
| | : | (REGULAR CALENDAR) |
| | : | |

D E C I S I O N

Rendered on June 25, 2026

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Mark R. Wilson* for appellee.

**On brief:** *Myyaun T. Newton*, pro se.

APPEALS from the Franklin County Court of Common Pleas

BOGGS, P.J.

{¶ 1}  Defendant-appellant, Myyaun T. Newton, appeals the judgments of the Franklin County Court of Common Pleas convicting him of five counts of felonious assault, with corresponding firearm specifications; one count of domestic violence; weapons while under disability; and one count of sexual battery.  For the following reasons, we affirm the trial court's judgments.

I.  PROCEDURAL HISTORY AND FACTS

{¶ 2}  On August 3, 2023, Newton was indicted in case No. 23CR-3798 for five counts of felonious assault, each with a firearm specification; one count of domestic violence, with a firearm specification; and one count of having weapons while under disability.  On October 17, 2024, Newton was also indicted for one count of sexual battery in case No. 24CR-5696.  Both indictments relate to events occurring on April 28, 2023,

involving Newton and his girlfriend Myesha Cowan; Myesha's children (two of whom are the biological children of Newton); and Michelle Cumberlander, Myesha's mother.

{¶ 3} The testimony of witnesses called by the state at trial indicated that on April 28, 2023, Newton and Myesha argued and that Newton pistol whipped Myesha across the face and injured her hand, requiring surgery. That day, while Myesha was at the hospital, her mother went to the apartment where the dispute took place to get Myesha's children, purse, and vehicle. As Michelle attempted to drive away, Newton, who was on foot outside the vehicle, began firing at the car with Michelle and three children inside. Police later found shell casings at the intersection of Ashburton Road and Dale Avenue. In conducting a search of Newton's phone, the police later found videos from April 28, 2023, that show Newton sexually assaulting Myesha who appeared to be unconscious. In the videos, Newton filmed himself inserting his finger into Myesha's vagina and urinating on her while she was unconscious.

{¶ 4} On May 10, 2024, Newton filed a motion to suppress evidence, arguing that the search and seizure of his cell phone was illegal and that all evidence obtained by said search should be suppressed. On July 9, 2024, Newton filed an addendum to his motion to suppress. Specifically, Newton argued that the search warrant was never signed or filed with the Clerk of Courts, in violation of Crim.R. 41. Newton also argued that the search warrant was stale as the warrant was not signed by a judge until September 13, 2023, nearly five months after the incident on April 28, 2023, and a second search warrant was not signed until June 5, 2024. Newton also stated that the affidavit in support of the search warrant did not reference "any actual facts that the cell phone would contain evidence of the crime of Felonious Assault. On the contrary, the affidavit makes only bare conclusions that cellphones in general contain evidence of crimes." (Mot. at 5.) Newton, in his motion, also argued that there were no facts asserted in the affidavit and search warrant that the cell phone contained evidence of criminal activity.

{¶ 5} Conversely, the state argued that the noncompliance with Crim.R. 41 is an administrative error but does not rise to an error of constitutional magnitude and was remedied on May 10, 2024 with the filing of a search warrant return inventory. The state also pointed out that the Columbus Police Department was searching Newton's cell phone for a separate incident that occurred on July 9, 2023, and in doing so "found evidence on

Defendant's phone not only directly refuting the statements of Defendant's alibi witnesses, but also placing him at the scene of the [car shooting with Michelle] mere minutes before the victim's vehicle was struck by gunfire." (July 22, 2024 Memo Contra at 4.) The state also argued that Newton's cell phone was legally obtained via a search warrant for an address Newton frequented and that the cell phone was within arm's reach of Newton when he was arrested.

{¶ 6} On August 1, 2024, the trial court conducted a multi-day hearing on the defense's motion. On August 28, 2024, the trial court denied Newton's motion to suppress the evidence found on his cell phone. The court stated that:

> First, Defendant argues failure to return the September 13, 2023 search warrant inventory violated Criminal Rule 41 and rises to the level of a constitutional violation. At this time, the Court finds that case law supports that this is an administrative error and does not rise to the level of a Constitutional violation. The Court further finds that factually, the contents of the Defendant's cellphone were provided to the Defendant on or around December 8 of 2023 and the State did alert defense counsel that search of the cell resulted in evidence contradicting the Defendant's alibi and witness statements. The Court finds that, again, based upon those facts as well, that this does not rise to the level of a Constitutional violation.
>
> . . .
>
> The Court finds that on the July 26, 2023 search warrant stated probable cause with respect to both investigations to search 1505 Minnesota Avenue. The cellphone was legally recovered during execution of that search warrant and the arrest of Defendant and it, again, was on the left side of the bed within his arm's reach of where he was arrested.
>
> . . .
>
> The Court further finds that even if probable cause for April 28 was inadequately stated, detective Baker was permitted to rewrite the search warrant to fix any inaccuracies.

(Aug. 28, 2024 Tr. at 160-161.)

{¶ 7} The trial court also rejected Newton's arguments that the search warrant was stale as the September 13, 2023 search warrant was done four and a half months after the April 28 incidents, noting that Newton was at-large for three of those months. The trial

court also found that the June 5, 2024 search warrant affidavit did state probable cause for the April 28 incidents. The trial court found that there was no reasonable substitute for actually looking in all the folders of the cell phone, rather than adopt Newton's argument that the search of the cell phone should have been limited to specific conversations, phone calls, and texts. The court also agreed with the state that all the evidence on the cell phone would have been inevitably discovered over the course of a lawful investigation in accordance with the inevitable discovery doctrine.

{¶ 8} On October 17, 2024, the state filed a motion for joinder of the felonious assault and sexual assault cases, which was granted on November 13, 2024.

{¶ 9} On November 15, 2024, just days before trial was set to begin, the trial court held a hearing to go over any preliminary issues or remaining motions in advance of starting trial. After considering various preliminary matters, Newton inquired whether the trial date was within speedy-trial time limits and also read a letter that expressed a lack of confidence with his counsel. The trial court noted that "if there is a breakdown in your communications such that [Newton] decides he wants new counsel, that is going to delay his trial date because we have to get new counsel and they would have to get up to speed on the case." (Nov. 15, 2024 Tr. at 47.) Newton wanted his counsel to make a motion to dismiss based on a lack of a speedy trial or for alleged *Brady* violations but his counsel advised him, and the court agreed, that there was no basis for either motion. Newton, however, requested new counsel, which the court granted.

{¶ 10} On February 27, 2025, at the state's request, the trial court held a bond modification hearing because the state was contacted by jail deputies after they found a letter in Newton's previous cell that appeared to be instructions on violent witness tampering. The letter, in part, noted the last projected start of trial, gave a description of the witness and an address, and stated: "Go holler at her. I-D-C. I don't care what happens, but she can't show up. Thanks, Love you. Flush this down the toilet." *Id.* at 315. Newton denied any association with the letter. On February 28, 2025, the court issued an entry of bond modification which suspended Newton's non-professional visitation and phone privileges, including in-person or virtual visitation and prohibited him from sending or receiving any mail with the exception of documents prepared or delivered by his counsel.

{¶ 11} On April 29, 2025, the day the rescheduled trial was set to begin, Newton again expressed dissatisfaction with counsel—this time with his second appointed counsel. The trial court ultimately rejected his concerns, finding that they were likely a stall tactic, and proceeded to trial.

{¶ 12} At trial, the state presented ten witnesses. Michelle Cumberlander, Myesha's mother, was the first witness to testify. She identified Newton in the courtroom and testified that on April 28, 2023 she received a call from Myesha requesting that Michelle pick up her children from school. Michelle also testified that she was concerned after, on a later video call, she saw that Myesha's face was swollen and that she was acting strange. Michelle went to an apartment complex where Newton's sister lived. She found Myesha, and she called the police. Myesha was eventually taken to the hospital by ambulance. Michelle also left but later returned to move Myesha's car. Michelle testified that when she reached the intersection of Ashburton Road and Dale Avenue she saw Newton on the sidewalk and that he began to shoot at her car with three children in the back seat.

{¶ 13} The state then called Officer Andrea Armentrout of the Columbus Police Department who was one of the first officers to arrive at the apartment complex following Michelle's 911 call. After Officer Armentrout was able to find and identify Myesha, Officer Armentrout advised Myesha to seek medical care and for her to file charges.

{¶ 14} The state then called Markisha Cumberlander, Myesha's cousin, to testify. Markisha testified that she was on the phone with Michelle and had spotted Newton just prior to the shooting of Michelle's car.

{¶ 15} Columbus Police Officer Jeremy Spoonemore testified as to finding shell casings at the intersection of Ashburton Road and Dale Avenue. Columbus Police Officer Michael Clepper testified that on April 28, 2023, he responded to a 911 call from Michelle Cumberlander that she had been shot at in her vehicle. Columbus Police Detective Matthew Baker also testified as to finding shell casings at the corner of Ashburton Road and Dale Avenue as well as about various videos found on Newton's cell phone. Jameson Smith, a 911 call taker, also testified at trial that he fielded calls about a shooting at Ashburton Road and Dale Avenue on April 28, 2023.

{¶ 16} Franklin County Sheriff's Deputy Zachary Cassa also testified at trial that, while Newton was in the jail awaiting trial, Newton asked Deputy Cassa to locate a letter in

his former cell that Newton misplaced. Cassa testified that Newton was persistent in his requests to retrieve the letter and appeared very nervous. Cassa eventually located and read the letter, which indicated potential violent witness tampering, and immediately reported it to his supervisor.

{¶ 17} Columbus Police Digital Forensic Examiner, Detective Brian Connelly, testified to the digital forensics reports that he completed regarding his search of Newton's cell phone—namely that the videos on Newton's cell phone from April 28, 2023 appeared to have been created on that cell phone and that they had not been modified.

{¶ 18} Columbus Division of Fire Firefighter-Paramedic Alexander Rafeld testified that on April 28, 2023 he reported to the scene and treated Myesha. Rafeld testified that he observed dried blood near Myesha's right eye and her bottom lip. Over the objections of Newton's counsel, Rafeld testified that Myesha stated "she got into a fight with her children's father and he hit her multiple times and, I quoted on here, [was] pistol whipped." (Tr. at 420.) Rafeld also testified that as the ambulance was transporting Myesha to the hospital, he observed a ring on Myesha's finger was bent in and digging into her finger and would need to be cut off.

{¶ 19} On May 2, 2025, the jury found Newton guilty of the counts of felonious assault along with their firearm specifications and the count of sexual battery. The trial court also found Newton guilty of the domestic violence count and the firearm specification, and the weapons under disability count. On May 15, 2025, Newton was sentenced to an indefinite prison term of 19 years to 22 years to be served consecutive to 6 years for the firearm specifications.

{¶ 20} On June 17, 2025, Newton, through counsel, filed his notice of appeal. On July 31, 2025, Newton filed a pro se motion notifying this court he intended to proceed pro se and requested his attorney be withdrawn as counsel of record. On August 1, 2025, this court granted his motion to proceed pro se.

## II. ASSIGNMENTS OF ERROR

{¶ 21} Newton argues the following nine assignments of error:

> 1. The trial court erred in denying Mr. Newton's motion to suppress evidence obtained from a cell phone search warrant that was never returned to the court, in violation of Crim.R. 41(F) and the Fourth and Fourteenth Amendments.

2. Prosecutorial misconduct violated Mr. Newton's right to a fair trial under the Fourteenth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

3. The defendant's conviction was against the manifest weight of the evidence where the only eyewitness testimony was discredited, and no physical or corroborating evidence supported the charges.

4. The trial court erred in admitting testimonial evidence without live testimony or authentication, in violation of the Sixth Amendment Confrontation Clause and Mr. Newton's due process rights—specifically regarding medical records used to support felonious assault charges and the video evidence used to convict on sexual battery.

5. The trial court erred in failing to sever improperly joined offenses [in] violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.

6. The defendant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

7. The trial court erred in failing to dismiss the case based on a violation of Mr. Newton's statutory and constitutional right to a speedy trial.

8. The trial court erred by failing to merge allied offenses of felonious assault for sentencing, in violation of R.C. 2941.25 and the Double Jeopardy Clauses of the U.S. and Ohio Constitutions.

9. Cumulative error and plain error doctrines require reversal.

(Capitalization normalized.) (Appellant's Brief at 2-3.)

## III. ANALYSIS

### A. Assignment of Error No. 1

{¶ 22} In Newton's first assignment of error he argues that the trial court erred in denying his motion to suppress, as the search warrants lacked the necessary specificity and particularity required under the Fourth Amendment. Newton also contends that the state's search warrant did not meet the procedural requirements of Crim.R. 41.

{¶ 23} We first dispense with Newton's argument that his constitutional rights were violated. As this court has previously noted, noncompliance with Crim.R. 41 with respect to the return of a search warrant is merely an administrative error, and is not an error of constitutional magnitude. *State v. Vinson*, 2021-Ohio-836, ¶ 28 (10th Dist.), citing *State v. Downs*, 51 Ohio St.2d 47, 64-65 (1977); *Downs v. Ohio*, 438 U.S. 909 (1978); *Columbus v. Wright*, 48 Ohio App.3d 107 (10th Dist. 1988). As the trial court noted, the "contents of [Newton's] cellphone were provided to [him] on or around December 8 of 2023 and the State did alert defense counsel that search of the cell resulted in evidence contradicting [Newton's] alibi and witness statements." (Tr. at 159.)

{¶ 24} We now turn to Newton's arguments that the search warrant was overbroad and the trial court erred in denying his motion to suppress the evidence from the search. We do not agree.

{¶ 25} Under the Fourth Amendment to the United States Constitution, a search warrant must be supported by probable cause. The Fourth Amendment applies to the states through the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio* 367 U.S. 643, 655 (1961). A police officer establishes probable cause for a search warrant through an affidavit. *See* Crim.R. 41(C). Probable cause involves a fair probability that criminal activity exists, not a prima facie demonstration of criminal activity. *State v. Ingold*, 2008-Ohio-2303, ¶ 19 (10th Dist.). Thus, a judge properly issues a search warrant if the totality of the circumstances establish a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The judge must make a probable cause determination through a "practical, common-sense decision." *Id.* In ruling on a motion to suppress, the trial court must exclude evidence obtained from a search warrant issued without probable cause if the officers did not execute the warrant in good faith. *State v. George*, 45 Ohio St.3d 325, 330-331 (1989).

{¶ 26} In reviewing whether a judge issued a search warrant on probable cause, we do not engage in a de novo determination. *George* at 330. Rather, a reviewing court accords great deference to the issuing judge's determination of probable cause, and doubtful or marginal cases should be resolved in favor of upholding the warrant. *Id.*

{¶ 27} Our examination of the June 5, 2024 search warrant, and its corresponding affidavit, does not indicate the warrant was overbroad or unsupported by probable cause.

The original July 27, 2023 warrant for 1505 Minnesota Avenue, the address associated with Newton at the time he was at-large and eventually arrested, was supported by an affidavit outlining the events of April 28, 2023, as well as a separate shooting that occurred on July 9, 2023. The trial court noted that the June 5, 2024 search warrant's corresponding affidavit

> allege[d] facts of the April 28 shooting and states, again, detective Baker's belief that based on his evidence, that the cellphone would have records from that April 28 time period to either corroborate the alleged[] victims or exculpate the Defendant relating to that shooting. The affidavit includes the specific circumstance and nature of the investigation and provides more than a fair probability to the evidence regarding both and the incidents would be found on Defendant's cellphone.

(Aug. 28, 2024 Tr. at 163-164.)

{¶ 28} We agree that the affidavit and search warrant are supported by probable cause that the search of 1505 Minnesota Avenue and Newton's cell phone would contain evidence regarding the April 28, 2023 incident. We overrule Newton's first assignment of error.

### B. Assignment of Error No. 2

{¶ 29} In his second assignment of error, Newton argues that his right to a fair trial and due process was violated through prosecutorial misconduct. Newton points to instances where he alleges the state was withholding exculpatory evidence and unfairly delayed trial. We do not agree with Newton.

{¶ 30} The test for prosecutorial misconduct is, first, whether the conduct is improper, and second, whether the conduct prejudicially affected the substantial rights of the accused. *State v. White*, 82 Ohio St.3d 16, 22 (1998); *Columbus v. Rano*, 2009-Ohio-578, ¶ 21 (10th Dist.). However, we note that Newton's counsel did not object to the alleged prosecutorial misconduct at trial; therefore, he has waived all but plain error here. "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Pilgrim*, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Saleh*, 2009-Ohio-1542, ¶ 68 (10th Dist.). For an error to be "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule; (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings; and (3) the error must have affected the outcome of the trial. *State v.*

*Barnes*, 94 Ohio St.3d 21, 27 (2002). Specific to allegations of prosecutorial misconduct, "[u]nder a plain error standard, a reviewing court asks whether a defendant ' "would not have been convicted in the absence of the improper conduct." ' " *State v. Lipkins*, 2017-Ohio-4085, ¶ 23 (10th Dist.), quoting *State v. Elson*, 2014-Ohio-2498, ¶ 43 (10th Dist.), quoting *Saleh* at ¶ 68.

{¶ 31} Newton argues that the state delayed proceedings by not producing evidence in a timely manner. We do not agree that delays in obtaining and sharing evidence here were improper, nor a plain or obvious error, or that it affected the outcome of trial, and Newton does not provide evidence of such.

{¶ 32} Newton also argues that in opening and closing statements, the prosecutor misled the jury. Newton takes issue with the prosecutor's statements that Myesha was pistol-whipped as highly inflammatory accusations not supported by direct evidence as Myesha did not testify at trial. Newton also argues that the prosecutor repeated a false narrative about which children were in the car at the time of the shooting at Ashburton Road and Dale Avenue. Newton directs us to the testimony of Michelle Cumberlander and of Markisha Cumberlander as stating three different children were in the car at the time of the shooting.

{¶ 33} However, courts afford prosecutors wide latitude in closing arguments, and prosecutors may draw reasonable inferences from the evidence at trial, commenting on those inferences during closing arguments. *State v. Hunt*, 2013-Ohio-5326, ¶ 18 (10th Dist.). The test for prosecutorial misconduct in closing arguments "is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984), citing *United States v. Dorr*, 636 F.2d 117 (5th Cir. 1981). That is, the "relevant question is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Quotation marks deleted and citations omitted.) *State v. Wilks*, 2018-Ohio-1562, ¶ 172. *See State v. Wilkerson*, 2002-Ohio-5416, ¶ 38 (10th Dist.), quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (" 'The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' "); *State v. Drayer*, 2004-Ohio-6120, ¶ 18 (10th Dist.) ("Even if the prosecutor's statements during closing arguments are improper, reversal based upon those

statements is warranted only if the statements permeate the entire atmosphere of the trial.").

{¶ 34} We do not find the arguments here improper. The state offered medical records and the testimony of Rafeld to support Myesha having been pistol-whipped, and while there was conflicting testimony on which children were in the car with Michelle, the jury as the finder of fact was best situated to judge the credibility of those witnesses. Accordingly, we overrule Newton's second assignment of error.

### C. Assignment of Error No. 3

{¶ 35} In Newton's third assignment of error, he argues that his conviction was against the manifest weight of the evidence.

{¶ 36} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 2010-Ohio-4738, ¶ 32 (10th Dist.), citing *State v. Thompkins*, 1997-Ohio-52, ¶ 25. An appellate court reviewing a manifest weight challenge to a criminal conviction "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 2014-Ohio-2501, ¶ 22 (10th Dist.), citing *Thompkins* at ¶ 25. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for the most "exceptional case in which the evidence weighs heavily against the conviction." (Internal quotation marks deleted and citation omitted.) *State v. Cervantes*, 2019-Ohio-1373, ¶ 27 (10th Dist.).

{¶ 37} Newton again takes issue with the conflicting testimony of which children were in the car at the time of the shooting as well as with testimony from 911 calls reporting hearing only 3 to 4 gunshots while the police found 11 spent shell casings at the scene. Newton also argues that Michelle Cumberlander was not a reliable witness. We note that a defendant will not be entitled to reversal on manifest weight or insufficient evidence grounds merely because inconsistent testimony was heard at trial. "While the jury may take note of the inconsistencies and resolve or discount them accordingly, see [*State v.*] *DeHass*,

10 Ohio St.2d 230, [. . .] (1967), such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Nivens*, 1996 Ohio App. LEXIS 2245, *7 (10th Dist. May 28, 1996). A jury, as finder of fact, may believe all, part, or none of a witness's testimony. *State v. Antill*, 176 Ohio St. 61, 67 (1964). We therefore overrule Newton's third assignment of error.

### D. Assignment of Error No. 4

{¶ 38} Newton's fourth assignment of error contends that his constitutional right to confront witnesses was violated when the trial court admitted medical records regarding Myesha's injuries, namely through the testimony and report of firefighter and paramedic Rafeld. Newton takes issue that the admission of medical records that included that Myesha was "pistol whipped" by the father of her children was testimonial and that this evidence was admitted without Myesha's direct testimony and was not properly authenticated.

{¶ 39} Evid.R. 803 allows for certain exceptions to the hearsay rule. In pertinent part, the rule states

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> (4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

{¶ 40} As stated above, Evid.R. 803(4) allows statements to be admissible when they are made for the purpose of a medical diagnosis. Here, Rafeld testified that when he was treating Myesha she stated that her injuries were from getting pistol-whipped by the father of her children. We do not agree with Newton that this runs afoul of his constitutional rights; Myesha's statement to Rafeld for the purposes of a medical diagnosis or treatment was not hearsay. In *State v. Clary*, 73 Ohio App.3d 42 (1991), the Supreme Court of Ohio stated:

> As the Staff Notes to Evid.R. 803(4) point out, this exception, identical to its federal counterpart, represents an expansion of

admissibility in this area. However, the Staff Notes also point out that the underlying rationale of the exception has remained the same; namely, the commonsense notion that you have a strong incentive to tell the truth and get it right when describing your condition to a doctor who could wield a sharp scalpel. See *Meaney v. United States* (C.A.2, 1940), 112 F.2d 538. The federal courts have recently recognized another rationale for the modern rule, based on Judge Weinstein's observations in his treatise -- that if the patient's statements are good enough for a doctor to rely on in making life or death decisions, then they should be good enough for the courtroom. Weinstein & Berger, Weinstein's Evidence (1979), 803-129; see *United States v. Iron Shell* (C.A.8, 1980), 633 F.2d 77, and Annotation, Admissibility of Statements Made for Purposes of Medical Diagnosis or Treatment as Hearsay Exception under Rule 803(4) of the Federal Rules of Evidence (1987), 55 A.L.R.Fed. 664.

*Id.* at 52.

{¶ 41} We agree with the trial court, and find no abuse of discretion, that the medical report fits within Evid.R. 803(4) as statements made to Rafeld for the purpose of medical diagnosis and treatment. We do not agree with Newton that the medical report was not authenticated or that it was provided without authenticating testimony, as the authenticity of the report was stipulated by counsel and the defense had the opportunity to cross-examine Rafeld after he testified.

{¶ 42} Newton also objected to the admission of the videos on his cell phone as evidence, arguing that the videos were not authenticated. He further argued that there was no evidence establishing that he was the person in the video assaulting an unconscious Myesha. We note, however, that Detective Connelly, in his forensic examination of the cell phone found indications that the videos were made with Newton's cell phone and that the videos had not been altered.

{¶ 43} We therefore overrule Newton's fourth assignment of error.

### E. Assignment of Error No. 5

{¶ 44} Newton argues that the trial court erred in failing to sever improperly joined offenses. We note, however, that at trial Newton did not make a motion to sever; we therefore understand his fifth assignment of error to argue that the trial court erred in joining the two indictments. "Trial courts have considerable latitude in determining

whether severance is warranted, and an appellate court will not reverse a trial court's decision to deny severance absent an abuse of discretion." *State v. Truss*, 2019-Ohio-3579, ¶ 18 (10th Dist.).

**{¶ 45}** In general, the law favors joining multiple offenses in a single trial if the offenses charged "are of the same or similar character." *State v. Lott,* 51 Ohio St.3d 160, 163 (1990). "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58 (1992). However, "joinder of offenses of the same or similar character 'creates a greater risk of prejudice to the defendant,' especially where the benefits from consolidation are reduced because the otherwise-unrelated offenses involved different times, locations, victims, and witnesses." *State v. Armengau*, 2017-Ohio-4452, ¶ 99 (10th Dist.), *discretionary appeal denied*, 2018-Ohio-365, quoting *Schaim* at 58, fn. 6.

**{¶ 46}** Crim.R. 8(A) states:

> Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

**{¶ 47}** While Crim.R. 8(A) allows a trial court to join indictments with offenses "of the same or similar character," courts have broadly construed the phrase "of the same or similar character" so that the offenses "need only be similar in nature, 'not identical in execution.' " *State v. Bennie*, 2004-Ohio-1264, ¶ 17-18 (1st Dist.), quoting *State v. Echols*, 128 Ohio App.3d 677, 708 (1st Dist. 1998) (Gorman, J., dissenting); *see State v. Bass*, 2013-Ohio-4503, ¶ 9 (10th Dist.) (distinctions in the victims, locations, and times of the offenses "do not mean that the two indictments charge offenses of dissimilar character").

**{¶ 48}** We review a trial court's decision on joinder under an abuse of discretion standard. *State v. Morris*, 2018-Ohio-5252, ¶ 34 (10th Dist.). An abuse of discretion is "unreasonable, arbitrary or unconscionable . . . a view or action that no conscientious judge could honestly have taken." *State v. Brady,* 2008-Ohio-4493, ¶ 23. Here we find no abuse

of discretion by the trial court as the two cases involve the same course of criminal conduct, which occurred on the same day, April 28, 2023. While Newton offers conclusory arguments that the charges are factually unrelated, we do not agree. The felonious assault charges against Myesha and the felonious assault charges against Michelle Cumberlander and the three children in the car all stem from the same course of criminal conduct, which began with the conduct underlying the domestic violence charge.

{¶ 49} We therefore overrule Newton's fifth assignment of error.

### F. Assignments of Error Nos. 6 and 7

{¶ 50} Newton's sixth and seventh assignments of error both concern his speedy-trial rights, so we consider them in tandem. In his sixth assignment of error, Newton argues that his counsel was ineffective for failing to raise his speedy-trial rights which, in his seventh assignment of error, he argues were violated. We do not agree with either of Newton's arguments here.

{¶ 51} We first consider whether Newton's speedy-trial rights were violated. "A criminal defendant has a right to a speedy trial under the Ohio Revised Code, the Ohio Constitution, and the Fifth and Sixth Amendments to the United States Constitution." *State v. Adams*, 2015-Ohio-3954, ¶ 80. Under R.C. 2945.71(C)(2), the state is required to bring a defendant charged with a felony offense to trial within 270 days of their arrest. Generally, the speedy-trial time period begins the day after a defendant's arrest. *See, e.g.*, *State v. Kadunc*, 2016-Ohio-4637, ¶ 10 (10th Dist.); *State v. Juarez-Hernandez*, 2012-Ohio-4835, ¶ 8 (10th Dist.). *See also* Crim.R. 45(A); R.C. 1.14.

{¶ 52} R.C. 2945.73(C)(1) states that "A person charged with a felony, who is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code, is eligible for release from detention." However, R.C. 2945.73(C)(2) further proscribes that:

> Upon motion made at or before the commencement of trial, but not sooner than fourteen days before the day the person would become eligible for release pursuant to division (C)(1) of this section, the charges shall be dismissed with prejudice unless the person is brought to trial on those charges within fourteen days after the motion is filed and served on the prosecuting attorney. If no motion is filed, the charges shall be dismissed with prejudice unless the person is brought to trial on those charges within fourteen days after it is determined by the court

that the time for trial required by sections 2945.71 and 2945.72 of the Revised Code has expired. If it is determined by the court that the time for trial required by sections 2945.71 and 2945.72 of the Revised Code has expired, no additional charges arising from the same facts and circumstances as the original charges may be added during the fourteen-day period specified under this division. The fourteen-day period specified under this division may be extended at the request of the accused or on account of the fault or misconduct of the accused.

{¶ 53} Newton did not file a motion in accordance with R.C. 2945.73(C)(2), and the trial court did not make a determination that his speedy-trial time expired. Therefore, Newton did not comply with R.C. 2945.73.

{¶ 54} Newton also argues that the trial court violated his constitutional right to a speedy trial; an argument he did not raise in the trial court waiving all but plain error. To determine whether a defendant's constitutional rights to a speedy trial were violated, a court considers four factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *State v. Selvage*, 1997-Ohio-287, 80 Ohio St.3d 465, 467.

{¶ 55} The first of these factors, the length of the delay, "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* at 530. Generally, a delay that approaches one year is presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652, fn. 1 (1992); *State v. Long*, 2020-Ohio-5363, ¶ 14. Newton was indicted on August 3, 2023, arrested on July 27, 2023, and his trial began on April 28, 2025; over a year and a half after his arrest and is therefore presumptively prejudicial.

{¶ 56} We now turn to the remaining factors to determine if Newton's constitutional speedy-trial rights were violated. In his brief, Newton only presents arguments pertinent to the second factor, that the government rather than the defendant was responsible for the delay. We ascribe different weights to the various reasons given for the delay in order ascribe responsibility. In *Barker* the court stated,

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be

considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker* at 531.

{¶ 57} Newton argues that the delay caused by the state in witness unavailability and scheduling conflicts with the trial court should be counted in his speedy-trial days. However, we do not find evidence in the record that these delays were intentional or deliberate and therefore afford slight weight here.

{¶ 58} The third factor for us to weigh is whether Newton properly asserted his speedy-trial rights, namely by filing a motion to dismiss the indictment. *Wilson v. Mitchell*, 250 F.3d 388, 396 (6th Cir.2001). We have already noted that Newton did not file a motion in accordance with R.C. 2945.73(C)(2) we therefore weigh this factor against Newton.

{¶ 59} The fourth factor a court weighs is prejudice, which a court assesses in light "of the interests of defendants which the speedy trial right was designed to protect." *Barker* at 532. Those interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Newton, however, does not offer arguments that the delay of his trial prejudiced him, but that the delay as a matter of law demands that his conviction is overturned. We do not agree and do not see that Newton's defense was impaired—particularly as one substantial delay was due to Newton requesting new counsel just days before trial was set to begin. We further find that the factors as we have weighed under *Barker* do not indicate that Newton's constitutional speedy-trial rights were violated. Having found that neither Newton's constitutional or statutory speedy-trial rights were violated, we overrule Newton's seventh assignment of error.

{¶ 60} We next turn to Newton's assignment of error that his counsel was ineffective for failing to raise his speedy-trial rights. To establish ineffective assistance of counsel, Newton must show that counsel's performance was deficient, and that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When a claim of ineffective assistance of counsel is based on counsel's failure to file a particular

motion, a defendant must show that the motion had a reasonable probability of success. *State v. Boddie*, 2011-Ohio-3309, ¶ 10 (10th Dist.), citing *State v. Barbour*, 2008-Ohio-2291, ¶ 14 (10th Dist.), citing *State v. Adkins*, 2005-Ohio-2577 (4th Dist.).

{¶ 61} In his brief to this court, Newton argues that he exceeded the 270 day statutory limit by at least 32 days and that the dismissal of charges was required by law. Without directing us to evidence in the record, Newton argues that some of the signatures on continuances and waivers of speedy-trial rights were forced or unauthorized and that others were filed without his consent. Newton also argues that the trial court improperly tolled speedy-trial time due to witness unavailability, scheduling conflicts, and the court managing its own docket—again without directing us to evidence in the record. However, even were this court able to identify which continuances Newton specifically objects to and the basis for each objection, in a challenge of ineffective assistance of counsel, it is Newton's burden to demonstrate that his counsel's motion would have had a reasonable probability of success. We do not find he has met his burden here. We note that the Supreme Court of Ohio has stated that "we will not second-guess trial strategy decisions, and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Mason*, 1998-Ohio-370, ¶ 83, quoting *Strickland* at 689. We accordingly overrule Newton's sixth assignment of error.

### G. Assignment of Error No. 8

{¶ 62} Newton's eighth assignment of error urges this court to find that the trial court erred by failing to merge the various counts of felonious assault related to the shooting at Michelle and the three minor children in the car—namely counts three, four, five, and six—for sentencing. Newton argues that the trial court failed to apply R.C. 2941.25, the state's allied offenses statute and that "the alleged conduct was a single act (a burst of gunfire at a vehicle), directed at multiple occupants, with no proof that each shot or action was individually targeted." (Appellant's Brief at 64.) We note that Newton did not raise this issue before the trial court and has waived all but plain error.

{¶ 63} R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 64} In *State v. Ruff*, 2015-Ohio-995, the Supreme Court of Ohio set forth the standard to apply to merger determinations under R.C. 2941.25:

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the **animus**, and the import.

2. Two of more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving *separate victims* or if the harm that results from each offense is separate and identifiable.

3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all of the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate **animus**.

(Bold in original; Italics added.) *Id.* at paragraphs one through three of the syllabus; *Armengau*, 2017-Ohio-4452, at ¶ 124.

{¶ 65} We find no plain error here. As the state argues, there were five separate victims of felonious assault: Myesha, Michelle, and the three children in the car. Newton's conduct here constituted offenses involving separate victims weighing against merger of allied offenses of similar import. Accordingly, we overrule Newton's eighth assignment of error.

### H. Assignment of Error No. 9

{¶ 66} In Newton's final assignment of error, he argues that the cumulative effect of multiple errors by the trial court denied him a fair trial and compels reversal under the doctrine of cumulative error. We disagree.

{¶ 67} Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for

reversal." *State v. Powell*, 2012-Ohio-2577, ¶ 223. *See also State v. Garner*, 74 Ohio St.3d 49, 64 (1995). To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors. *State v. Fletcher*, 2021-Ohio-1515, ¶ 16 (2d Dist.); *State v. Stober*, 2014-Ohio-5629, ¶ 15 (3d Dist.). However, such is not the case here as we have already determined that the trial court did not err in the manner argued by Newton in his previous assignments of error. Newton's claim for relief under the cumulative error doctrine therefore cannot succeed. Accordingly, we overrule Newton's ninth assignment of error.

## IV. CONCLUSION

{¶ 68} Having overruled Newton's nine assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

EDELSTEIN and DINGUS, JJ., concur.

———————————